## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

                             **Case No. 1:24-cr-66-3**

       v.

                             **JUDGE DOUGLAS R. COLE**

**PHILIP COLT MOSS,**

       **Defendant.**

### OPINION AND ORDER

The indictment in this case charges Philip Colt Moss with two counts based on his alleged involvement in a conspiracy to create and distribute animal crush videos. At his original detention hearing, which occurred in the Southern District of Iowa, the Magistrate Judge ordered Moss released on various conditions pending trial. The government, however, sought a stay of that release order, which the Magistrate Judge granted, to provide time for the government to move to revoke the order. It has since done so. For the reasons stated more fully below, the Court **DENIES** the government's Motion for Revocation of Release Order (Doc. 34) and **ORDERS** Moss released pending trial subject to the conditions set forth by the Southern District of Iowa, as modified by this Opinion and Order.

### BACKGROUND

On June 5, 2024, the grand jury indicted Moss and two others in connection with their alleged involvement in creating and distributing animal crush videos, which are videos depicting animal torture. (Indictment, Doc. 1). Although the

indictment contains eight counts, only two implicate Moss: one count of conspiracy to create and distribute animal crush videos (Count 1) and one count of distribution of animal crush videos (Count 8). (*Id.* at #2–24, 27–28).

In early August, authorities arrested Moss in the Southern District of Iowa where he was living with his wife. (Return of Arrest Warrant, Doc. 30; Pretrial Service Report, Doc. 37, #486). Shortly thereafter, he appeared before the Magistrate Judge for a detention hearing. (8/13/24 Min. Entry, Doc. 14, 4:24-mj-374 (S.D. Iowa)). The Magistrate Judge ordered Moss released pending trial and set various conditions for that release. (Release Order, Doc. 15, 4:24-mj-374 (S.D. Iowa)). The Magistrate Judge also ordered Moss to appear in the Southern District of Ohio—where these charges are pending. (Order Requiring Appearance, Doc. 16, 4:24-mj-374 (S.D. Iowa)). That court then transferred Moss's case to this District. (Docs. 17, 20, 4:24-mj-374 (S.D. Iowa)). Before the transfer, however, the government moved the Magistrate Judge to stay the order of release pending trial, arguing that the "release plan [wa]s insufficient to assure his appearance and the safety of the community." (Doc. 19, 4:24-mj-374 (S.D. Iowa)). The Magistrate Judge granted the government's motion, staying the case until this Court could review the Release Order. (8/14/24 Text Order, 4:24-mj-374 (S.D. Iowa)). The matter was officially committed to the Southern District of Ohio on August 16, 2024. (Commitment to Another District, Doc. 24, 4:24-mj-374 (S.D. Iowa)).

Once the case transferred, the government moved to revoke the Magistrate Judge's release order. (Doc. 34). It reiterates its argument that Moss is both a danger

to the community and a flight risk, and should therefore be detained pending trial. (*Id.* at #251).

Moss appeared before a Magistrate Judge in this District for his initial appearance and arraignment on August 29, 2024. (8/29/24 Min. Entry). The Magistrate Judge ordered Moss to remain in custody until the undersigned ruled on the government's motion. (*Id.*).

Moss has since opposed the government's motion to revoke his release order and requested a hearing on the issue. (Doc. 44). After some additional investigation into Moss's financial status, the Court appointed Moss counsel, (9/18/24 Not. Order), and then held the requested hearing on September 19, 2024, (9/19/24 Min. Entry). With that, this matter is ripe for review.

## LEGAL STANDARD

When the government moves to revoke a release order, the district court reviews that order de novo. *United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd* (Nov. 1, 2013); *United States v. Spivak*, 555 F. Supp. 3d 541, 546 (N.D. Ohio 2021); *United States v. Watkins*, No. 13-02, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (observing that, although the Sixth Circuit has not "spoken directly" on the appropriate standard of review when a district court reviews a magistrate judge's detention order, "most district courts in the Sixth Circuit have applied the *de novo* standard of review").

Generally the law presumes that a defendant should be released pending trial. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Pretrial detention is

3

warranted only if a court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making that determination, the Court must consider four factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Spivak*, 555 F. Supp. 3d at 547 (quoting 18 U.S.C. § 3142(g)) (internal quotation marks omitted). The Court addresses each below.

## LAW AND ANALYSIS

**A.    The Government Has Not Shown That Moss Presents a Danger to Others or Constitutes a Flight Risk.[1]**

### 1.    Nature and Circumstances of the Offense.

First the Court must consider the nature and circumstances of the offense charged, including whether the offense is a violent crime. 18 U.S.C. § 3142(g)(1). Here, the indictment charges Moss with one count of conspiring to create and distribute animal crush videos and one count of distributing animal crush videos. (Doc. 1, #2–24, 27–28). To be sure, the charges allege horrific conduct that includes violence against living creatures. But at the hearing, the government clarified that it

---

[1] The Court emphasizes that the Magistrate Judge initially determined that Moss should be released pending trial because conditions ensuring his appearance and community safety exist. (Doc. 15, 4:24-mj-374 (S.D. Iowa)). Other than a drug paraphernalia possession charge—which was not disclosed during Moss's initial detention hearing in Iowa for reasons about which the parties disagree—nothing about Moss's situation has changed. Moreover, after the Court's de novo review here, it agrees with the Magistrate Judge's determination.

charges Moss only for his role in promoting, purchasing, and distributing the videos depicting that violence. (*See also id.* at #11–15, 17–18, 20–23 (outlining Moss's electronic communications with other co-defendants in promoting the creation of animal crush videos)). In other words, while Moss is alleged to have participated in "creating" the videos, that was solely by way of electronic communications. He is not alleged to have directly inflicted any harm on animals himself. That is not to minimize the heinous nature of the alleged underlying offense. But the allegations, even if true, suggest that Moss does not so much present a risk of violence himself; rather, Moss allegedly promotes violence only when he is in contact with others.

The Court thus concludes that with adequate electronic monitoring, which it outlines more fully below, the nature and circumstances of the offense do not establish that Moss's release presents an unacceptable risk to the safety of others and the community. So this factor favors pretrial release.

### 2.    Weight of the Evidence Against Moss.

Now consider the weight of the evidence against Moss. Importantly, this factor "only goes to the likelihood of dangerousness or that the defendant will pose a risk of flight, 'not the weight of the evidence of the defendants' guilt.'" *United States v. Bothra,* No. 19-1092, 2019 U.S. App. LEXIS 9375, at *4–5 (6th Cir. Mar. 28, 2019) (quoting *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (noting that § 3142(g) "neither requires nor permits a pretrial determination of guilt").

Start with dangerousness. The government argues that the "logs of chats" demonstrating Moss's communications with co-defendants amount to substantial evidence that Moss presents a danger to the community. (Doc. 34, #256). It says that if Moss is released, he will continue to engage in the alleged conduct and share animal crush videos, harming the community. (*Id.*). But the Court is not persuaded. As explained, Moss himself never inflicted any direct harm on animals. And with proper electronic monitoring and restrictions on his movement, Moss will lack the ability to communicate with others, precluding him from continuing to partake in the alleged activities, were he otherwise so inclined. The availability of such restrictions assuages the Court that Moss will not present a danger to the community when released.

Now consider risk of flight. The government claims that Moss's resources, experiences travelling internationally, and comments claiming that he can travel without a passport show strong evidence of him potentially fleeing. (*Id.*). But even if Moss has claimed otherwise, the Court concludes it would be difficult, if not impossible, for Moss to leave the country without a passport—something the Court will require him to surrender before release. And Moss's previous international trips do not amount to substantial evidence that he will flee now.

Taken together, the Court concludes that the weight of the evidence here does not overcome the presumption in favor of pretrial release.

### 3.     Moss's History and Characteristics.

Next, the Court addresses Moss's history and characteristics—the third § 3142(g) factor. Here, the Court must consider his "character, physical and mental

6

condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at courts proceedings." 18 U.S.C. § 3142(g)(3)(A). And the Court must ask "whether, at the time of the current offense or arrest, [Moss] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." *Id.* § 3142(g)(3)(B).

Moss's history and characteristics point in both directions. Moss was born in Des Moines, Iowa, and has lived there his entire life (apart from three years while he attended school). (Doc. 37, #486). His wife, mother, and father also reside there. (*Id.* at #486–87). And Moss's wife confirmed that he can return to their residence if he is released pending trial (*Id.* at #486). She even volunteered to serve as a third-party custodian.[2] (*Id.* at #487). These community and familial ties minimize both Moss's danger and his risk of flight, pointing in favor of pretrial release.

That said, Moss does have a history of substance abuse, which previously resulted in various drug-related offenses. (*Id.* at #488–89). That gives the Court some pause. But at the hearing, Moss represented that he received substance abuse treatment as recently as this summer and that he has not relapsed since. And despite

---

[2] The government argues that Moss's wife is an unsuitable third-party custodian because she likely knew of Moss's participation in the group chats with his co-defendants and failed to prevent it. (Doc. 34, #262). The Court notes two problems with this argument. First, Moss's statement in a chat to his co-defendant that his wife knew of his conduct does not mean that she in fact knew. Second, even if she did, her failure to prevent his participation before his indictment (perhaps not knowing any such conduct was potentially criminal) does not mean she would allow him to participate now.

those charges resulting in some criminal history, as noted, Moss does not have a record of any prior violent offenses. (*See id.*). True, he also suffers from anxiety, but he has received treatment for that, too. (*Id.* at #487–88). More to the point, Moss stated that he wishes to continue mental health treatment if released pretrial—treatment he would not likely receive if he remained in pretrial detention. (*Id.* at #488). In light of Moss's recent substance abuse treatment, along with the ongoing mental health treatment he is receiving, the Court views his drug abuse history and mental condition as neutral in terms of pretrial release.[3]

Perhaps what troubles the Court the most in connection with this factor is the government's claim that Moss neglected to tell Pretrial Services, the Court, and his attorney in Iowa about a drug-related charge for which police arrested him in April 2024. (Doc. 34, #258). Moss counters that he did inform his counsel of the charge and that his most recent stint in rehab was unrelated to it, (Doc. 44, #505), but the government argues otherwise, (Doc. 34, #258–59). Ultimately, though, the Court concludes that, whichever account is true, home detention coupled with substance abuse testing should inhibit Moss's access to illicit drugs (and also detect if he has obtained access), which seems to be the underlying issue.

Ultimately, the Court finds this factor neutral on whether pretrial release is warranted.

---

[3] Under the original conditions of release, Moss must "undergo a substance abuse evaluation and participate in substance abuse treatment, to include inpatient services, if required, as directed by the supervising officer." (Doc. 15, 4:24-mj-374 (S.D. Iowa)). As stated below, the Court orders this original condition of release, along with the others, except as modified herein.

4.      **Nature and Seriousness of the Danger.**

That leaves the final § 3142(g) factor—the "nature and seriousness of the

danger to any person or the community that would be posed by the [defendant's]

release." 18 U.S.C. § 3142(g)(4). Again, the Court emphasizes that Moss never

directly inflicted violence on any animal, and the government does not claim

otherwise. And to the extent that Moss has a criminal record, it relates only to drug

abuse, not violent crime that poses danger to others. (Doc. 37, #488–89). The Court

therefore concludes that Moss's release does not present a significant risk of serious

danger to the community, especially if Moss has limited access to the internet and

cannot communicate with his co-defendants or others involved in creating animal

crush videos.[4] So this factor also supports pretrial release.

*      *      *

All told, the Court finds that three of the four § 3142(g) factors favor releasing

Moss before trial and that one factor is neutral. Ultimately, the Court concludes that

the combination of conditions, including surrender of passport, home detention,

limitations on communications, monitoring software on any electronic devices to

which he has access, substance abuse treatment and testing, and mental health

treatment will reasonably assure Moss's appearance and community safety.

---

[4] The original conditions of release state that Moss "shall not have access to the internet (except for purposes of treatment)." (Doc. 15, 4:24-mj-374 (S.D. Iowa)). As stated below, the Court orders this original condition of release, along with the others, except as modified herein.

9

**B.      Modified Conditions of Release**

Although the Court denies the government's motion, the Court will impose strict conditions on Moss's release. Specifically, the Court orders the original conditions of release set by the Magistrate Judge, with the following modifications:

- Mr. Moss shall obtain pre-approval from U.S. Probation[5] for any employment;

- Mr. Moss must not own, possess, or have access to an animal, other than any pets currently residing in his home, unless approved by the U.S. Probation Office;

- Mr. Moss shall not make any international telephone calls or engage in any other form of communication with any persons outside the United States;

- Mr. Moss shall not have access to the internet, except for purposes of treatment. Should Moss need to access the internet for treatment purposes, he is permitted use of one computer or one Android device. He may access the Internet at his home (World Wide web, FTP Sites, IRC Servers, Instant Messaging, etc.) on that device alone for treatment purposes pre-approved by U.S. Probation. His computer or Android use shall be subject to manual inspections, as deemed appropriate by the supervising officer, and the installation of monitoring software as explained below. Moss shall pay all or part of the cost of the program based upon his ability to pay as determined by U.S. Probation;

---

[5] In the Southern District of Ohio, the Pretrial Services Office handles supervision of defendants who are released pending trial. Moss's supervision, though, will occur in the Southern District of Iowa, and there, U.S. Probation supervises such defendants. Accordingly, the Court refers to U.S. Probation in this Order in connection with supervision.

- Mr. Moss shall submit to the installation of software and to the monitoring of computer activities on any computer he is authorized to use. The software will record any and all activities on Moss's computer. The software will be checked on a periodic basis. Moss will have no expectations of privacy regarding computer use or information stored on the computer and shall make other users of said computer aware of the monitoring software. Any information gathered by said software may be used against Moss in subsequent court actions regarding his computer use and the conditions of supervision. Furthermore, Moss shall comply with the rules set forth in the Computer and Internet Monitoring Agreement and the Computer and Internet Acceptable Use Agreement as adopted by the Southern District of Ohio. Moss shall pay all or part of the cost of the software based upon his ability to pay as determined by U.S. Probation;

- By consent of other residents in the home, any computers in the home utilized by other residents shall be approved by U.S. Probation, password protected by a third-party custodian approved by U.S. Probation, and subject to inspection for compliance by U.S. Probation; and

- Mr. Moss shall be held until his passport is surrendered and travel arrangements have been made.

## CONCLUSION

For the reasons explained, the Court **DENIES** the government's Motion for Revocation of Release Order (Doc. 34) as to Defendant Moss. Upon the surrender of

11

his passport, the Court **ORDERS** Moss released pending trial under the original conditions of release as modified in this Opinion and Order.

      **SO ORDERED.**

September 27, 2024

**DATE**

        **DOUGLAS R. COLE**
        **UNITED STATES DISTRICT JUDGE**